## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ELIJAH REID, # M-12485, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 13-cv-51-JPG** |
| | ) | |
| M. BUNDREN (Badge No. 11667) | ) | |
| and C/O JONES, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  His claims arose while Plaintiff was confined at Tamms Correctional Center ("Tamms"), which has since been closed.  Plaintiff is serving a life sentence for murder.  Plaintiff claims that he was subjected to excessive force, was subsequently denied medical treatment for his injuries, and was improperly punished as a result of a false disciplinary report.

Specifically, Plaintiff states that Defendant Bundren engaged in a longstanding pattern of harassment and threats against Plaintiff (Doc. 1, p 3).  On March 25, 2012, Defendants Bundren and Jones conducted a strip search of Plaintiff before placing him in handcuffs and leg irons to walk him to the shower.  Defendant Bundren, while making vulgar comments to Plaintiff, clamped the handcuffs extremely tightly onto Plaintiff's wrists, causing him pain (Doc. 1, p. 4).  After placing Plaintiff in leg irons, Defendants pushed him toward the shower, causing the leg irons to cut into his ankles.  Once in the shower, Defendants pushed Plaintiff to the floor, and Defendant Bundren continued to taunt him (Doc. 1, p. 5).  Defendants removed the leg irons,

closed the shower door with Plaintiff inside, and then Defendant Bundren yanked Plaintiff's

arms (still cuffed behind him) through the chuckhole.  Defendant Bundren twisted the handcuffs,

saying, "I told [you] that you were going to pay for what you did in Menard" (Doc. 1, p. 5).

Plaintiff screamed out in pain, but Defendant Bundren told him to shut up and bent Plaintiff's

hand backwards.  When Defendant Bundren removed the cuffs, he told Plaintiff, "you got blood

on my handcuffs" (Doc. 1, pp. 5-6).  Defendant Jones, who had been present the entire time,

laughed, and both Defendants walked away.  Plaintiff realized that his ankles and wrists were

bleeding, and his wrists were swollen, purplish, and extremely painful.  Plaintiff's calls for a

nurse were unanswered.

Thirty minutes later, Defendant Jones returned with another officer, and told Plaintiff that

Defendant Bundren reported that Plaintiff had spit in his eye and Plaintiff would have to wear a

"spit mask" (Doc. 1, p. 6).  Plaintiff denied spitting on Defendant Bundren, and Defendant Jones

admitted that Plaintiff was right, but said he didn't see anything.  Plaintiff showed Defendant

Jones his injuries and asked to see a nurse.  After first promising to get medical help, Defendant

Jones informed Plaintiff at lunch that he would not send a nurse, even when Plaintiff told him

that he was in pain and the swelling had increased (Doc. 1, p. 7).

Plaintiff was charged with the offense of "102: assaulting any person," and requested

Defendant Jones as a witness (Doc. 1, p. 7).  When interviewed, Defendant Jones stated that he

did not see whether Defendant Bundren was assaulted.  Plaintiff was found guilty and disciplined

with one year segregation, one year C-grade and loss of commissary privileges, and loss of one

year of good conduct credit (Doc. 1, p. 8).  Plaintiff notes, however, that he is not entitled to

good time because he is sentenced to serve a term of natural life without the possibility of parole.

Plaintiff invokes this Court's supplemental jurisdiction to consider his state law battery

claim along with his constitutional claims.  He seeks declaratory and injunctive relief as well as

damages.

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of

the complaint.  Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has

articulated a colorable federal cause of action against Defendants Bundren and Jones for

excessive force (Count 1), for deliberate indifference to medical needs (Count 2), and for battery

(Count 3).  However, Plaintiff's allegation that he was deprived of a liberty interest without due

process as a result of the false disciplinary report (Count 4) fails to state a claim upon which

relief may be granted, and shall be dismissed for the following reasons.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held

that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth

Amendment claim when the accused inmate is given a subsequent hearing on those charges in

which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S.

539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the

right to call witnesses if prison security allows, and a written statement of the reasons for the

discipline imposed).  The Seventh Circuit reasoned that prisoners have a right "to be free from

arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the

procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary

actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff states that he was falsely accused of assault by

Defendant Bundren.  He does not indicate that he was denied any of the procedural protections

described in *Wolff*.  To the contrary, his witness (Defendant Jones) was interviewed and

Defendant Jones' statement was considered by the disciplinary hearing committee.

Unfortunately for Plaintiff, Defendant Jones' testimony did not help his defense (*See* Doc. 1, pp. 13-14).  When an inmate is given a proper hearing, yet is found guilty of a false charge, he has no constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).  The testimony of the accusing officer is sufficient to meet this standard.  On the other hand, if Plaintiff was not afforded the procedural protections in *Wolff*, he still may not have an actionable claim.

To sustain a claim under § 1983 for a procedural due process violation, an inmate must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

The Seventh Circuit has recently elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships:  "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original).

The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation.  For relatively short periods of disciplinary segregation, inquiry into specific

Page **4** of **8**

conditions of confinement is unnecessary.  *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005)

(56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short

period when one considers his 12 year prison sentence").  In these cases, the short duration of the

disciplinary segregation forecloses any due process liberty interest regardless of the conditions.

*See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry

into the conditions of confinement").

      In Plaintiff's case, he was sentenced to one year of disciplinary segregation.  This would

often be a long enough period of time to require factual inquiry into the conditions of

segregation.  However, in light of Plaintiff's life sentence, even a one year period is relatively

short.[1]  Further, in an inquiry as to whether the segregation conditions faced by Plaintiff were

unusually harsh compared to his normal prison environment, *see Sandin v. Connor*, 515 U.S.

472, 486 (1995), the fact that Plaintiff was confined in Tamms and now has been transferred to

Pontiac cannot be ignored.  The general conditions of confinement at Tamms, which until its

closure was the only state "supermax" facility, have been found to impose atypical and

significant hardships.  *Westefer v. Snyder*, 422 F.3d 570, 589-90 (7th Cir. 2005).  Plaintiff, now

in Pontiac, is no longer subject to the conditions prevailing in Tamms.

      Plaintiff's complaint does not include any description of his conditions of segregation,

either at Tamms or in Pontiac.  Instead, the chief concern he raises in the complaint is that he

now has a staff assault on his record, for something he did not do.  Under *Marion*, however, the

factual allegations in Plaintiff's complaint do not indicate any deprivation of a due process

liberty interest for his segregation time.  And it is well established that inmates have no liberty or

---

[1] The information on the website of the Illinois Department of Corrections indicates that Plaintiff is now 35 years of age.  Inmate Search Page, http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited Feb. 6, 2013).

property interest in their classifications and prison assignments. *See DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).  Nor does the loss of other privileges present a viable constitutional claim. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).  A loss of good time credit would implicate a liberty interest if the loss would affect the length of Plaintiff's sentence – but here, Plaintiff's life sentence is unchanged regardless of the revocation of good time.[2]  Accordingly, Count 4 shall be dismissed.

## Pending Motion

Plaintiff's motion for appointment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Frazier for further consideration.

## Disposition

**COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **BUNDREN** and **JONES**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps

---

[2] Plaintiff may not seek damages in a § 1983 action for the loss of good conduct credits.  A revocation of good time credits may be challenged in a federal habeas corpus action pursuant to 28 U.S.C. § 2254, but only after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck v. Humphrey,* 512 U.S. 477, 480-81 (1994).  The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004).

to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazer** for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** February 7, 2013

s/ J. Phil Gilbert
United States District Judge